UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RUSSELL PRIDE,

    Plaintiff,

v.                                                   Case No. 04-C-703

LIBERTY MUTUAL INSURANCE CO., et al.,

    Defendants.

---

**DECISION AND ORDER**

---

Plaintiff Russell Pride, an ironworker, was injured on the job when he fell while working at the Lambeau Field Redevelopment project. He received workers compensation benefits from his employer, National Riggers & Erectors, Inc., a subcontractor. He now seeks to bring tort actions alleging negligence against the project's general contractor, Turner Construction Company, and Havens Steel, another subcontractor.[1]

The familiar *quid pro quo* embodied in workers compensation law means that an employee gains the benefit of strict employer liability for injuries sustained on the job but sacrifices the ability to bring tort claims against his employer. This case presents a twist on that framework: whether Wisconsin's Worker's Compensation statute precludes an injured worker at a project from bringing tort claims against subcontractors on the same project who were *not* his employer. Following removal to this court, as well as a lengthy stay, the defendants have brought a motion for summary

---

[1] The defendants are all out-of-state entities, and the amount in controversy is alleged to exceed $75,000. That affords this court with diversity jurisdiction under 28 U.S.C. § 1332.

judgment. They assert that because all of the subcontractors were named insureds on a "wrap up" policy of insurance purchased by the owner, the workers compensation statute implicitly bars claims against these subcontractors as well. Allowing the plaintiff to proceed against them in a tort action, they assert, would disrupt Wisconsin's workers compensation scheme.

## ANALYSIS

Wisconsin's Worker's Compensation statute sets forth the exclusive remedy rule and the rights of employees and employers:

> Where such conditions exist the right to the recovery of compensation under this chapter *shall be the exclusive remedy against the employer*, any other employee of the same employer and the worker's compensation insurance carrier. This section does not limit the right of an employee to bring action against any coemployee for an assault intended to cause bodily harm, or against a coemployee for negligent operation of a motor vehicle not owned or leased by the employer, or against a coemployee of the same employer to the extent that there would be liability of a governmental unit to pay judgments against employees under a collective bargaining agreement or a local ordinance.

Wis. Stat. § 102.03 (italics added).

In addition, Wis. Stat. § 102.29 clarifies that an employee's claim against an employer "shall not affect the right of the employee . . . to make a claim or maintain an action in tort against any other party for such injury or death, hereinafter referred to as a 3rd party . . ." Defendants concede that the statute speaks only of employees and employers, and thus the exclusive remedy rule would not on its face bar a tort claim against a non-employer contractor. Defendants propose, however, that when several employers who are all contractors on the same project enter into what is essentially a group workers compensation insurance program, each contractor should be insulated against tort liability as though they were actually the employer of the injured worker.

2

The developer, Lambeau Field Redevelopment, LLC, created an owner controlled insurance program ("OCIP") and obtained a policy issued by defendant Liberty Mutual Insurance. Under an OCIP, the owner buys a policy of insurance that will cover all of the subcontractors. By absorbing the cost of insurance itself, the owner averts the need for each subcontractor to include the cost of insurance in its bid. *See, e.g., Casey v. Vanderlande Industries, Inc.,* 2002 WL 1496815, *2 (W.D. Ky. 2002). Thus, the policy named as insureds "all subcontractors of any tier . . . for whom the First Named Insured has agreed by contract to provide General Liability coverage under the Owner Controlled Insurance Program." (Kostecke Aff., Ex A at 3.) One commentator has summarized the purpose of OCIPs:

> Owner-Controlled Insurance Programs (OCIPs) were developed to make the insurance programs used primarily for construction projects more equitable, uniform and efficient. OCIPs eliminate the costs of overlapping coverage and delays caused by coverage or other disputes between the parties involved in a project and, at the same time, protect all the contracting parties by bringing the risk of loss from the project within the insurance coverage of the OCIP.
> By intent and design, OCIPs are most effective for larger construction projects. The owner negotiates the appropriate price and terms of the policies for the project and directly benefits by eliminating the cost of overlapping coverage. The greater the number of contractors involved in the OCIP, and the greater the number of overlapping policies that are eliminated, the greater are the savings to the owner. The money the owner saves does not come from the contractors' pockets. The contract price is reduced because insurance costs are not incurred by the contractors on the project. The cost of doing the work should be constant, and the owner and contractors alike would be amply covered by the insurance policies covering the project.

John J. Loveless, "Construction Insurance: Do You Only Get What You Pay For?" 78-APR N.Y. St. B.J. 10 (March-April 2006).

The defendants assert that their OCIP arrangement means that they are entitled to the protections of the exclusive remedy rule even though they are not the plaintiff's employer. For support, they rely heavily on an unpublished case from the Eastern District of Michigan, *Stevenson*

3

*v. HH & N / Turner,* No. 01-CV-71705-DT, 2002 U.S. Dist. LEXIS 26831(E. D. Mich. 2002). In that case, the court was persuaded that the OCIP effectively treated all enrolled contractors as the employer of the injured plaintiff. *Id.* at *44. Although I recognize *Stevenson* is not controlling precedent, it is worth pointing out its limitations as applied to this case. First, I note that the court was interpreting Michigan's worker's compensation law rather than Wisconsin's. The court found persuasive the fact that Michigan's legislature had enacted regulations governing OCIPs that ensured a "primary condition for approval of the OCIP by the Michigan Department of Consumer and Industry Services is that 'liability under this act of each employer to all his or her employees would at all times be fully secured . . . .'" *Id.* at *42 (quoting Mich. Comp. Laws § 418.621(3)). Wisconsin's code, in contrast, merely requires that "All contractors and subcontractors shall be included under the wrap-up program." Wis. Adm. Code. § 80.61(3)(b)(5).[2]

In addition, neither the OCIP in this case nor the regulatory authority suggests that all contractors covered by an OCIP are to be deemed a unitary employer for worker's compensation purposes. If the legislature had truly intended to allow employers at a construction site to bundle together their worker's compensation liability, it would have been simple enough to craft a provision stating that the owner of an OCIP-insured project is deemed the sole employer of any employee of any contractor injured on that project. Instead of grouping the contractors together, however, the OCIP treats each contractor as a separate insured. This suggests that, while the state allows a developer of a large construction project to save costs and headaches by obtaining an OCIP, each contractor is still considered a separate entity.

---

[2]Moreover, the fact that Michigan's statute requires that the liability of "each" employer to all of its employees be secured does not seem to imply that employers are somehow immune from tort lawsuits brought by those who are not their employees.

4

Finally, there is nothing inherent in the nature of an OCIP that would lead to the conclusion the defendants assert. By all accounts, OCIPs provide cost *savings* to those involved because they allow the owner to control the purchasing of a policy and presumably create premium savings by virtue of the owner's better bargaining position. Thus, while OCIPs apparently have a streamlining effect and allow for certain cost savings, such benefits appear rather pedestrian in relation to the defendants' suggestion that OCIPs have effected a watershed change in worker's comp law. In fact, it remains wholly unclear why a *less* expensive insurance program would afford participants *more* coverage by insulating them from tort suits not just from their own employees but from employees of all other firms involved. Accordingly, I am not persuaded that *Stevenson* has much persuasive effect on this case. Without any explicit toe hold in the statute, I am unwilling to find that the clear language of the state's worker's compensation scheme would bar tort claims against non-employers merely because they entered into an OCIP.

In fact, Wisconsin courts have been consistent in emphasizing that it is the employer-employee relationship, rather than any other considerations, that triggers the exclusive remedy rule. The contours of that rule are worth exploring. For instance, the exclusive remedy rule will be imposed if the injured plaintiff is a "loaned employee" of the defendant. In *Bauernfeind v. Zell,* for example, the plaintiff's employer offered him to a subcontractor to assist in a project on a temporary basis. The plaintiff "went to the warehouse and proceeded to work under the supervision of [defendant], who was 'running the floor' and telling the people involved in installing the racking system what they should do and how they should do it." 528 N.W.2d 1, 3 (Wis. 1995). Bauernfeind worked under the defendant's direction for more than two hours before being injured, and the court found that that level of control sufficed to create an employer-employee relationship and trigger the exclusive remedy rule. In other words, Bauernfeind was barred from bringing tort claims because

5

he was actually deemed an employee (albeit temporarily) of the defendant, the defendant being entitled to the protections of the exclusive remedy rule.

As the Wisconsin Supreme Court later noted,

> [t]he rationale of the loaned employee doctrine as it relates to worker's compensation is that an employee who is on loan to a borrowing employer becomes a loaned employee of the borrowing employer and should, for worker's compensation purposes, be treated as an employee of the borrowing employer. The loaned employee doctrine is one way of promoting the compromises and policies underlying the Worker's Compensation Act.

*Borneman v. Corwyn Transport, Ltd.,* 580 N.W.2d 253, 256 (Wis. 1998).

The loaned employee exception makes sense because applying the exclusive remedy rule in such cases preserves the *quid pro quo* between employers and employees: it protects employers from tort claims brought by *employees* (whether actual or loaned), and it allows employees to assert strict liability against whomever is filling the role of their employer when they are injured. Absent that relationship, the exclusive remedy rule serves no purpose.[3]

What all of this means is that Wisconsin courts will apply the exclusive remedy rule whenever the injured plaintiff is functionally and intentionally fulfilling the role of an employee, because it is only in those cases that the original bargain between employers and employees is fulfilled. In contrast, there is no indication in this case that the plaintiff, an employee of National Riggers & Erectors, bargained away any of his rights as to Havens Steel or Turner Construction.

---

[3]As plaintiff notes, this result is implicit in the Miller Park accident case, where the contractors were also party to an OCIP. In her concurring opinion, Justice Roggensack noted that "whether the decedents were loaned employees of MHIA and therefore barred from bringing claims against MHIA by the exclusive remedy rule of the Worker's Compensation Act, Wis. Stat. § 102.03(2), is an unresolved issue that could impact the punitive damages award." *Wischer v. Mitsubishi Heavy Industries America, Inc.,* 2005 WI 26, 694 N.W.2d 320, 339 (Wis. 2005). This implies that the exclusive remedy rule turns only on the loaned employee doctrine rather than any insurance program the contractors might employ.

6

It does not matter, in other words, how various contractors on the same project decide to divy up costs for insurance coverage: whether each subcontractor buys his own insurance or whether they all fall under the policy purchased by the developer, their own contractual arrangement for insurance purposes does not transform nonemployers into employers. Allowing them to contract each other out of tort liability would afford the other employers a *quid* without any additional *quo* going to the injured employee. As set forth above, the purpose of an OCIP is quite limited: it is intended to streamline the insurance buying process and save costs of overlap. There is no indication that the legislature, in allowing such policies, intended to change the exclusive remedy rule. As the Wisconsin Court of Appeals recently concluded in allowing suit against a nonemployer in another atypical factual context, "[p]erhaps this case will cause the legislature to consider this particular scenario. However, based on existing statutory language, we cannot conclude, as a matter of law, that Warr's claim against QPS is barred. Warr was not employed by QPS and QPS did not compensate Warr's employer (Cornwell) in any way." *Warr v. QPS Companies, Inc.,* 728 N.W.2d 39, 43 (Wis. Ct. App. 2006).

In sum, because Wisconsin's exclusive remedy rule applies only to employers (with exceptions inapplicable here), the defendants' motion for summary judgment on that basis is **DENIED**.

**SO ORDERED** this   5th   day of June, 2007.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
